T. Gregory **MEADOWS**, at al., Plaintiffs,

v.

**PACIFIC INLAND SECURITIES CORPORATION, et al.,** Defendants.

**No. Civ.97–cv–0358–TW(JFS).**

United States District Court, S.D. California.

Feb. 17, 1999.

___

Timothy Karen, for Plaintiffs.

John Bender, for Defendants.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT [149–1], [152–1], [170–1]

STIVEN, United States Magistrate Judge.

### I. INTRODUCTION

The present action was filed on March 3, 1997, naming dozens of defendants, including Signal Securities, the Moving Defendants herein.[1] The claims against Defendant Signal Securities are brought by Plaintiffs Carroll B. Grafa III, Grafa Management, Inc., Grafa Partnership, Ltd., and B.J. Grafa, Ltd. (hereinafter "Grafa" or "Plaintiffs"). These plaintiffs, along with approximately twenty-five other plaintiffs in this action, are individual investors in Towers Financial Corporation promissory notes ("Towers notes"). They allege that they purchased the Towers notes based upon recommendations of various brokers, advisors, and brokerage houses named as defendants in this action. Plaintiffs allege that Towers was a sham operation from the outset, and that despite the existence of numerous red flags, the defendants recommended investments in the Towers notes, and that Plaintiffs relied on those recommendations in deciding to purchase the notes.

On April 9, 1998, this Court issued an order granting in part and denying in part, without prejudice, motions to dismiss Plaintiffs' original complaint by Defendants FSC Securities Corporation, Gary Kreisser, Signal Securities, Mickey Cargile, and Cargile Investments. On September 8, 1998, this Court issued a second order modifying its first decision. With regard to the Grafa claims at issue in the instant motion, these two prior orders issued by the Court dismissed with prejudice all claims against Defendants Mickey Cargile and Cargile Investments as barred by the statute of limitations, and dismissed all actions against Defendant Signal Securities relating to transactions that occurred before September 1, 1991 also as barred by the statute of limitations. Lastly, the April Order dismissed, without prejudice, the claims against Defendants Mickey Cargile, Cargile Investments, and Signal Securities as failing to meet the particularity requirements of Fed.R.Civ.Pro. 9(b).

On June 22, 1998, plaintiffs filed a First Amended Complaint. On October 5, 1998, Defendant Signal Securities filed a motion to dismiss Plaintiffs' First Amended Complaint, primarily on the basis that Plaintiffs fail to state a claim because the claims are barred by the statute of limitations. On October 28, 1998, Plaintiffs filed for leave to file a Second Amended Complaint. Both the motion to dismiss the First Amended Complaint and the motion for leave to file a Second Amended Complaint were heard on November 25, 1998 in Courtroom E before the Honorable James F. Stiven.[2] Upon reviewing the papers filed with the court, and having heard oral argument on the matter, the Court hereby **FINDS** and **ORDERS** that Plaintiffs' motion for leave to file a Second Amended

---

1. Defendants FSC Securities Corporation and Gary Kreisser also had originally filed a motion to dismiss Plaintiffs' First Amended Complaint. This motion was to be heard simultaneously with Defendant's Signal Securities motion to dismiss, however the Court was informed that this action settled before the motion was heard, and Defendants FSC Securities Corporation and Gary Kreisser withdrew the related motions. [144–1], [144–2].

2. Pursuant to consent by the parties and order by District Judge Miller, on December 9, 1997, all motions to dismiss for this case were referred to Magistrate Judge Stiven for determination under 28 U.S.C. § 636(c).

Complaint is **GRANTED,** and Defendant's motion to dismiss the First Amended Complaint is **GRANTED IN PART AND DENIED IN PART.**[3]

## II. DISCUSSION

### A. *The factual allegations in the Second Amended Complaint will control whether the Court grants Defendant's motion to dismiss.*

This Court's prior rulings determined that all transactions that occurred prior to September 1, 1991 would be barred by the statute of limitations. In the First Amended Complaint (FAC), Plaintiff Grafa alleged that he had "renewed" his purchases of Towers notes from Defendant Signal Securities, through its representative Mickey Cargile, on May 2, 1991, May 5, 1991, September 13, 1991, December 17, 1991, and January 30, 1992. (FAC ¶ 97.) In the proposed Second Amended Complaint (SAC), Grafa alleges that he "purchased" Towers Notes on March 30, 1992, and April 28, 1992. (SAC ¶ 21.)

This Court recognizes that in the order the motions were filed, the Court would normally determine whether or not to dismiss the First Amended Complaint, and then consider whether to grant leave to file the Second Amended Complaint. However, this is the third time this Court has considered whether Plaintiffs can state a viable cause of action not barred by the statutes of limitations applicable to the sales and purchases of these securities. This Court also notes that while somewhat different, the FAC and the SAC are substantially similar and, as discussed below, the determination of whether this complaint should be dismissed is on most points the same under the facts alleged in either the FAC or the SAC. Lastly, Defendant filed a limited opposition to Plaintiffs' motion to file the SAC, and in replying to Plaintiffs' opposition to the motion to dismiss, Defendant relies heavily on factual allegations stated in the SAC.

In light of these facts, this Court will first rule on the motion to amend and for the reasons stated below, **GRANTS** Plaintiffs'

motion for leave to file a Second Amended Complaint. "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend." *Howey v. United States,* 481 F.2d 1187, 1191 (9th Cir.1973). Following the discussion in this Court's April Order, the Court finds that the defendants are not prejudiced by granting leave to file a Second Amended Complaint, and does not believe that Plaintiffs have acted in bad faith.

Both Defendant and the Court have reviewed the proposed SAC, and Defendant referred to the facts alleged in the SAC in papers filed with the Court and in oral argument. Accordingly, this Court expects that if following this order Plaintiffs choose to file their amended complaint, the proposed Second Amended Complaint will be filed. As discussed below, this Court will permit Plaintiffs to *further amend* only *one paragraph* of the proposed Second Amended Complaint before it is filed. Lastly, as Defendant has reviewed and had the opportunity to respond to the SAC, and the Court has considered in its analysis Defendant's arguments that statements made in Plaintiffs' initial pleadings are party admissions, the factual allegations in the SAC will control the determination of whether Plaintiffs' complaint against Defendant Signal Securities should be dismissed.[4]

### B. *The March and April 1992 Transactions will be considered new transactions for the purposes of deciding the motion to dismiss.*

██ In the FAC, the underlying transactions on which the lawsuit is based were "renewal" transactions that occurred on May 2 and 5, 1991, September 13 and December 17, 1991, and January 30, 1992. (FAC ¶ 97.) In the SAC, the underlying transactions on which the claims are premised are limited to "new" transactions allegedly occurring on March 30, 1992 and April 28, 1992. (SAC ¶ 21.) Plaintiffs' counsel alleges that the fac-

---

3. As set forth herein below in detail, this Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss applies with equal force to Plaintiff's Second Amended Complaint.

4. As stated above however, this Court will, where appropriate, refer to allegations in both the FAC and the SAC when considering whether to dismiss Plaintiffs' complaint.

tual changes between the FAC and the SAC are "due to the fact that Plaintiffs' counsel inadvertently misunderstood the particular facts which were earlier alleged." (SAC ¶ 3.)

When considering a motion to dismiss for failure to state a claim, a court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). In Defendant's Partial Opposition to Grafa's Motion to File Second Amended Complaint, Defendant argued that Plaintiffs were attempting to "characterize previously dismissed claims as renewed transactions. . . . By re-dating these transactions, the claims which were dismissed with prejudice would have new life." However, in oral argument, the parties agreed that in March and April 1992, Grafa made affirmative decisions to reinvest in the Towers notes, rather than withdraw his money when the notes had come to full term.[5]

15 U.S.C. § 77(c)(a)(3) exempts from coverage under the Securities Exchange Act of 1934 "[a]ny note . . . which has a maturity at the time of issuance of not exceeding nine months, . . . or any renewal thereof the maturity of which is likewise limited." This leads the Court to conclude that the renewal of a non-exempted note is to be considered a separate transaction for the purposes of this act.[6] Similarly, when determining whether an action has been filed within one year after the violation upon which it is based, the court in *McLernon v. Source International, Inc.,* 701 F.Supp. 1422, 1427 (E.D.Wis.1988) (*citing Raiford v. Buslease, Inc.,* 825 F.2d 351, 353–54 (11th Cir.1987)) stated, "Giving broad effect to the language in the 1933 Act, as is required, an unregistered security is 'sold' for purposes of 12(1) liability when the last

integral act of sale is completed, including payment for and delivery of the securities."

This Court finds that the last integral act of sale for the March and April 1992 transactions occurred when Grafa decided to reinvest his money in the Towers notes, rather than to withdraw the funds as he was entitled to do at maturity. Accordingly, for the purpose of determining whether to dismiss Plaintiffs' First Amended Complaint, or grant leave for Plaintiffs to file a Second Amended Complaint, the transactions alleged in the SAC will be considered "new" transactions as alleged in the SAC.[7] Therefore, based on this Court's prior ruling on tolling the statute of limitations (which tolled the statute for the period from June 10, 1994 through December 11, 1996), the subject transactions occurring in March and April 1992 would *not* be barred by the three-year statute of limitations applicable in this case.[8]

### C. The One–Year Statute of Limitations based on Injury Notice will not bar Plaintiff's claims.

As stated above, Plaintiffs' claims as now pled (the March and April 1992 "purchases" as per the SAC) avoid the three-year statute of limitations bar. However, these claims still may be barred if they were not filed within one year of when Plaintiffs had notice of the fraudulent conduct on which the claims are based. In its April 1998 Order, this Court left open to amendment the question of whether Plaintiffs could plead sufficient facts to avoid the bar of the one-year statute of limitations.

Defendant argues that Grafa has admitted in prior complaints that he was aware of possible misconduct in the sale of the Towers notes as early as December 1992, or no later than March 1993, when Towers filed for

---

5. Plaintiffs' counsel likened the "renewal" to a decision to a buy a new Treasury Bond when the original investment matured. Defense Counsel referred to the "renewal" as a "repurchase."

6. The notes "renewed" or "repurchased" by Plaintiffs were two-year promissory notes and therefore are covered under the Act. *See* FAC ¶ 97; SAC ¶ 21(a) and (b).

7. The Court finds it necessary to make this determination based on the allegations in the SAC for

these limited purposes as the dates of the alleged transactions are highly material in determining when the statutes of limitations applicable to the underlying transactions begin to run.

8. Generally, the statute of limitations applying to federal securities claims is one year after discovery of facts constituting the violation, or three years from the date of the subject transaction. 15 U.S.C. § 77m; *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 359–64, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

bankruptcy. If these facts were true, Plaintiffs' claims against Signal Securities would be barred by the one-year statute, as under this Court's present ruling, tolling did not *begin* until June 10, 1994, which is more than one year after March 1993.

However, Plaintiffs' counsel has stated he made a mistake in drafting the complaint in that the allegation was copied verbatim from one of the earlier federal class action complaints, which purported to speak for the class plaintiffs.[9] In earlier versions of the complaint, Plaintiffs' counsel did not note this allegation for change, and argues that in fact, a separate set of facts applies to each individual plaintiff regarding when they learned of the alleged misconduct. Due to this error by counsel, the Court permitted Plaintiffs leave to amend the complaint.

The Court again notes that for a motion to dismiss, the Court must construe all facts alleged in the complaint as true. In the SAC, Grafa alleges a series of facts which in conclusion state that in *February 1994*, Grafa realized "that he most likely had been defrauded in connection with the Towers investment." (SAC ¶ 22(*1*).) Defendant argues Plaintiffs were on inquiry notice in March 1993 as a matter of law. This Court recognizes that "[t]he issue of inquiry notice is often a factual issue for a jury. However, where the underlying facts are undisputed, factually-based issues such as inquiry notice may be decided as a matter of law." *In re Valence Technology, Inc.*, 987 F.Supp. 796, 801 (N.D.Cal.1997).

 First, this Court rejects the argument that as a matter of law Plaintiffs were on notice of possible securities fraud when Towers filed for bankruptcy at the end of March 1993. This Court recognizes, but elects not

to follow, the holding in *Phillips v. Kidder, Peabody & Co.,* 933 F.Supp. 303, 312 (S.D.N.Y.1996) where the court stated, "[Defendant] filed for bankruptcy on December 20, 1985. Thus, the class was on notice of potential claims against the defendant at that time." In coming to this conclusion, the *Phillips* court relied on two other cases where Plaintiffs had inquiry notice of potential securities claims when the defendants filed bankruptcy, *In re Integrated Resources Real Estate Ltd. Partnerships Securities Litigation,* 815 F.Supp. 620, 664 (S.D.N.Y.1993) and *Gruber v. Price Waterhouse,* 697 F.Supp. 859, 865 (E.D.Pa.1988), aff'd. 911 F.2d 960 (3d Cir.1990).

Upon review of these two cases, this Court notes that in finding inquiry notice, these courts noted not only the bankruptcy filings, but also considered other known facts indicating possible fraud by the defendants.[10] Without other facts and in the absence of clear authority stating otherwise, this Court cannot find that as a matter of law Plaintiffs had inquiry notice of potential securities fraud when Towers filed bankruptcy in March 1993.

This Court must then look to other facts alleged in the FAC or SAC to determine if Plaintiffs had inquiry notice of possible securities fraud prior to June 11, 1993. Defendant argues the following test applies to determine if Plaintiffs had notice:

> "Discovery" occurs (1) when the plaintiff had actual knowledge of facts sufficient to arouse suspicion in a reasonably prudent person, or (2) when the plaintiff had access to the "means of knowledge" of such facts and a reasonably prudent person would have used those means before making the relevant financial decision. Moreover, if a prudent person would have become suspi-

---

**9.** While not germane to the Court's decision here, the Court is compelled to comment that much time and effort could have been avoided had Plaintiffs' counsel not made so many "mistakes" in drafting the original and first amended complaint.

**10.** In *In re Integrated Resources,* 815 F.Supp. at 664–65, the fraud alleged was that the offerings omitted information that the defendant (the Partnership), at the time of the offering, was only days away from declaring a moratorium on the payment of all its debts, and that the Partnership was going to be adversely impacted due to the

cost of an asbestos removal program. The court noted that a month after the bankruptcy, the plaintiffs received information discussing the Partnership's extensive financial difficulties, and indications that the plaintiffs had notice of the asbestos program when they made their investment. In *Gruber,* 697 F.Supp. at 865, the court noted that at the time of the bankruptcy, the subject company had sustained significant losses, which were of record. Also, within two months after the bankruptcy filing, several reports of fraud by management were reported and federal and state investigations of the subject entity were publicly revealed.

cious from the knowledge obtained through the initial prudent inquiry and would have investigated further, a plaintiff will be deemed to have knowledge of facts which would have been disclosed in a more extensive investigation.

*Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1367 (9th Cir.1978).

■ More recent Ninth Circuit cases have stated the inquiry as:

"Notice" is provided by "facts that would have caused a reasonable person to suspect the possibility of a misrepresentation or a misleading omission." It is not necessary for plaintiffs to have full knowledge of the existence of a claim or of each allegation in a claim. Knowledge of facts that would lead a reasonable investor to exercise due diligence in investigating for potential fraud is sufficient. In other words, the statute of limitations is triggered once there are "sufficient storm warnings to alert a reasonable person to the possibility that there were either misleading statements or significant omissions involved in the sale." A reasonable investor is deemed to have knowledge of well publicized and widely available information in the public domain.

*In re Valence Technology*, 987 F.Supp. at 800–01 (citations omitted). Accordingly, this Court must determine, based on the facts alleged in either the FAC or the SAC, whether Plaintiffs had knowledge of facts that would lead a reasonable investor to exercise due diligence and investigate for possible fraud.

In ¶ 97(f) of the FAC, Grafa states that he "had no complaints regarding his Towers Notes investments . . . until he learned that Towers had gone bankrupt in early April of 1993. When Grafa expressed his concern about his investment [to his broker], he was told repeatedly that the investment was secured and insured against loss. . . . However, Grafa gradually learned facts to the contrary through reading the newspaper and by the

fall of 1993, he had concluded that he would not be recovering 100% of his investment."

Grafa expands on the sequence of events leading him to learn of his investment problems in SAC ¶ 22(a) – (*l*). Grafa states that he received a letter from Towers' CEO in late February 1993 indicating that Towers Financial Corporation and the Securities and Exchange Commission agreed to the entry of a "Consent Preliminary Injunction." [11] The SAC continues that Grafa communicated with his broker through telephone calls and letters from March 1993 through February 1994. These communications indicate that Grafa's broker (an agent of Signal Securities) was involved with the bankruptcy and hired several attorneys to represent Plaintiffs' and other investor's interests in the bankruptcy proceedings. Plaintiffs allege they were aware of several reasons why a company might file for bankruptcy, and the fact that Towers filed for bankruptcy and Grafa's broker had hired bankruptcy attorneys to protect investors did not immediately indicate the occurrence of fraudulent misconduct.

Lastly, Grafa alleges that through reading the newspaper, by December 1993, he first concluded he would not be recovering 100% of his investment. However, the first time anyone mentioned the possibility of fraud was not until February 1994 when he received a letter from his broker informing him that the bankruptcy trustee had commenced a $400,000,000 lawsuit for fraud against Towers' CEO. Grafa alleges that at this point he realized he had most likely been defrauded in connection with the Towers investment.

■ For Plaintiffs' claims to be barred by the one-year statute of limitation, this Court must find that the "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct" by June 11, 1993. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir.1984) cert. denied 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984). The allegations in the FAC and the SAC (taken togeth-

---

**11.** The letter stated: "Towers Financial Corporation and the Securities and Exchange Commission have agreed to the entry of a Consent Preliminary Injunction. The order provides that Towers is to be operated as a going concern in order to protect your investment. It further provides that all payments of principle and interest

for your obligations are to be frozen and stopped. We have presently put the company up for sale or merger. This will not result in any cash being paid to Towers' majority shareholders. We are looking to convert your debt to a trading security so that you will be able to sell these securities in the capital markets and recoup your principle."

er) clearly state: 1) Grafa received a letter in February 1993 indicating involvement by the Securities and Exchange Commission; 2) Grafa learned of the Towers bankruptcy at the end of March or beginning of April 1993; 3) Grafa thereafter communicated often with his broker who stated his investment was secure and never indicated he was suspicious of any fraudulent misconduct; and 4) Grafa did not learn of fraudulent claims alleged against Towers until, at the earliest, the fall of 1993, or at the latest, February, 1994. While not compelling, these averments at the least put in controversy when Grafa learned of or had inquiry notice of the alleged fraud.

Defendant cites *Kramas v. Security Gas & Oil, Inc.,* 672 F.2d 766 (9th Cir.1982) for the proposition that even if Grafa received reassurances from his broker, he still has a duty to exercise reasonable diligence to investigate possible fraud. However, this Court finds that even if it were to be found that Grafa unjustifiably relied on the information received from his broker from the time of the bankruptcy to June 11, 1993, the facts alleged in the pleadings do not clearly demonstrate that other information, beyond the filing of the bankruptcy, was available to Plaintiffs before June 11, 1993, sufficient to put Plaintiffs on inquiry notice as a matter of law by June 11, 1993.

Based on the facts alleged in the FAC or the proposed SAC, this Court cannot find that the "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct" by June 11, 1993. With the consideration that this inquiry occurs within a motion to dismiss, and not, for example, within a motion for summary judgment whereby the Court may receive and consider evidence beyond the pleadings, the facts alleged are insufficient to find that as a matter of law Plaintiffs had notice of fraudulent misconduct by Towers or by Defendant Signal Securities by June 11, 1993. Thus, this Court **DENIES** Defendant's Motion to Dismiss with regard to Plaintiffs' §§ 10(b), 12(2), 15 and 20 claims,

and finds, for purposes of this motion only, that these claims are not barred by the one-year statute of limitations provision.

### D. Plaintiffs allege insufficient facts to cause tolling to roll back to the March 1, 1993 filing of the Dinsmore action.

■ On February 9 or 10, 1993, representative plaintiffs who had purchased Towers notes filed a class action, *Gold v. Towers Fin. Corp., Inc.,*[12] later renamed *In re Towers Fin. Corp. Noteholders Litig.,* in the Southern District of New York. (SAC ¶ 155.) On March 1, 1993, another class action lawsuit, *Dinsmore v. Towers Financial Corporation, et al.,* was filed in the Central District of California.[13] (*Id.* ¶ 155.) On June 7, 1993, a Consolidated Amended Class Action Complaint ("CACAC") was filed in New York, consolidating the *Gold* and *Dinsmore* cases and naming several brokerage houses as representative defendants.[14] (*Id.* ¶ 158.) On June 10, 1994, the class filed the Second Consolidated Amended Class Action Complaint ("SCACAC"), and Signal Securities was specifically named as one of the defendants in the SCACAC. (*Id.* ¶ 159.) In December 1996, the class action plaintiffs voluntarily dismissed, without prejudice, the SCACAC against the brokerage house defendants. (*Id.* ¶ 162.)

This Court's April 9, 1998 Order held that Plaintiffs were entitled to some equitable tolling. However, this Court also found that the facts alleged in the original complaint were insufficient to conclude that Defendants were reasonably put on notice of the pendency of claims against them by the filing of the CACAC on June 7, 1993. (April Order p. 10.) This Court held that tolling of the statutes of limitations applicable to this case occurred when the SCACAC was filed on June 10, 1994, when the individual defendants were named and received actual notice. (*Id.*) Plaintiffs were granted leave to amend the complaint, and although the Court's discussion regarding amendment focused on the allegations of when Plaintiffs discovered

---

**12.** Plaintiffs allege that they were members of the *Gold* class but did not hear about this suit until substantially later. (SAC ¶ 155.)

**13.** Plaintiffs do not allege that they were members of the *Dinsmore* class and do not state when

they became aware of this lawsuit. However, by class definition they would have been included in the plaintiffs class.

**14.** Defendant Signal Securities was *not* a named Defendant in the CACAC.

fraudulent misconduct by the defendants, Plaintiffs argue that the Court's granting leave to amend also leaves open the issue of when Defendants received notice of the earlier class actions so that the statute of limitations might be tolled as early as March 1, 1993 when the *Dinsmore* action was filed.

The *Dinsmore* action was filed in the United States District Court for the Central District of California on March 1, 1993. Plaintiffs allege that the *Dinsmore* complaint purported to represent the interests of Towers investors against all of the brokerage houses that sold the Towers investments. (SAC ¶ 155.) Dinsmore brought the action on behalf of himself and the class proposed as those individuals who invested in Towers notes from February 15, 1989 to the time the action was filed. (SAC Ex. 50, ¶ 25.) The complaint named Monterey Bay Securities as the representative of a defendant class consisting of all broker-dealers who, pursuant to the "private placement memoranda," participated in the offer and sale of Towers notes from February 15, 1989 to the time the complaint was filed. (SAC Ex. 50, ¶ 27.) Plaintiffs here argue that notwithstanding this Court's April 9, 1998 Order, tolling should extend back to March 1, 1993, the date the *Dinsmore* action was filed.

In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that in the context of a plaintiffs' class action "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." The Supreme Court has stated that a tolling rule for class actions is consistent with the purposes served by statutes of limitations:

> Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights, but these ends are met when a class action is commenced.... [A] class complaint "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment."

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983) (citations omitted). However, *American Pipe* and *Crown, Cork & Seal* involved *plaintiffs'* classes, and the parties have not cited to any Supreme Court or Ninth Circuit appellate case that has applied this rule to an action involving a defendants' class.

This Court's April 9, 1998 decision finding that tolling did not occur until the filing of the SCACAC relied on the reasoning of *In Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 155 (E.D.Pa.1976) which held that the statute of limitations is not tolled against unnamed members of a defendant class unless and until they are specifically named in an amended complaint. The *Chevalier* court stated, "otherwise, defendants would be required to defend against actions of which they had no knowledge whatsoever until after the statute of limitations had run." *Id.*

Plaintiffs rely on, and this Court has considered, the case of *In re Activision Securities Litigation*, 1986 WL 15339 at *5 (N.D.Cal. Oct.20, 1986) where the court held that the statute of limitations was tolled from the date the original class complaint was filed, as defendants were members of the defendant class even though they were not individually named. However, as this Court noted in its April 9, 1998 decision, in *In re Activision*, the defendants conceded that they had actual notice both that the suit was filed and that they were included as defendant class members. *Id.* at *3. The *In re Activision* court relied heavily on the fact that defendants had notice of the action and specifically stated, "The broad, dual purposes of statutes of limitations, notice and repose, are satisfied. Class members were on notice of this action and that they [were] unnamed members of the class well before the statute of limitations expired." *Id.* at *5.

Plaintiffs also rely on *Appleton Electric Co. v. Graves Truck Line, Inc.*, 635 F.2d 603 (7th Cir.1980). There, the court held that where the defendant class is ultimately certified the statute is tolled as to each defendant class member from the time the complaint was filed until such time as the defendant is notified of the suit and chooses to opt out.[15]

---

**15.** The Seventh Circuit in *Appleton* cited and ultimately disagreed with the *Chevalier* court.

The *Appleton* court stated that they were confronted with a true conflict between the operation of the statute of limitations and Rule 23. In concluding to toll the statute of limitations from the time the class action was filed, even though defendants argued they had not received notice of the suit, the court stated:

> This conflict can be resolved only by the promotion of one rule at the expense of the other, unless due process considerations require a particular result. Our reading of the cases convinces us that due process is not offended by the tolling doctrine, even where a defendant has no notice of a suit until after the limitations period had run. The Supreme Court specifically rejected the contention that due process was abridged by the tolling doctrine in *American Pipe.*

*Id.* at 609 (citations omitted).

This Court disagrees with the rationale on which the *Appleton* court relied in reaching this conclusion. The *Appleton* court noted that of those circuits that have considered the question of whether notice is necessary to invoke the tolling doctrine, the courts have uniformly held that the filing of a complaint is sufficient to interrupt the running of a federal statute of limitations. However, in those cases, as in *American Pipe,* the courts were dealing with either individual plaintiffs or a *plaintiffs'* class where the defendants were individually named. Also, the tolling rule has been applied to a plaintiffs class action regardless of whether class certification ultimately is granted or denied. *Tosti v. City of Los Angeles,* 754 F.2d 1485 (9th Cir.1985). However, there are no similar decisions involving a defendant class.

In conclusion, this Court believes it must balance the needs of the defendant to be "notified of the substantive claims brought against them" with ensuring that Rule 23 class actions are not deprived "of the efficiency and economy of litigation which is a principal purpose of the [class action] procedure." *In re Activision,* 1986 WL 15339 at *2 (citing *American Pipe* ).[16] Accordingly, and consistent with its prior ruling, this Court holds that there can be no tolling back to March 1, 1993 unless the moving defendant here had actual notice of the pendency of the *Dinsmore* action.

Plaintiffs argue that the Defendant in fact did have actual notice of the *Dinsmore* action. Plaintiffs allege that all of the defendants named in the SAC are headquartered in Los Angeles,[17] and "Plaintiffs are informed and believe that [a newspaper] article, and others like it referring to the Towers class action, were read by management level officials at Defendants and that through news reports and other sources, management level officials of Defendants had actual notice that Defendants was the target of class action litigation on the part of Towers investors *within several months* of the filing of the *Dinsmore* action." (SAC ¶ 156, emphasis added.)

This Court finds that the facts as presently alleged in the SAC are insufficient to persuade this Court to change its prior ruling and toll the statute of limitations from the time the *Dinsmore* action was filed, rather than from June 1994 when the SCACAC was filed and Signal Securities was named as a defendant. In asserting a violation of the securities laws, the plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity with the statute of limitations. *Toombs v. Leone et al.,* 777 F.2d 465, 468 (9th Cir.1985) (citations omitted). The allegations in the SAC are conclusory at best. Plaintiffs fail to allege specific facts that as of a certain date, Defendant Signal

---

**16.** The court in *In re Activision,* 1986 WL 15339 at *3, also cited to a treatise by Professor Newberg, 1 Herbert Newberg, Class Actions § 4.52, 388–393 (2d ed.1985), stating:

> [A]ny potential unfairness created by applying the class action tolling rule to [a] defendant class can be eliminated by ensuring that the defendant class members receive some sort of individual or other reasonable notice soon after the action is filed.

Professor Newberg has maintained this position in more recent versions of his class action treatise. See 1 Herbert Newberg & Alba Conte, Class Actions § 4.53, 205–206 (3d ed.1992).

**17.** In a motion to dismiss, a court should accept all factual allegations in the complaint as true. This Court must assume that the blanket allegations in the SAC apply to all defendants. However, Defendant argues in their reply papers that, as a matter of fact, Signal Securities is a Texas broker dealer, and thus argues that it did not receive notice from a Los Angeles newspaper.

Securities had actual notice of the *Dinsmore* action. Even with the presumption in ruling on a motion to dismiss that all *facts* alleged in a complaint are deemed true, this Court finds that these allegations state conclusions, not facts, that Defendant Signal Securities had actual notice of the *Dinsmore* action. Under these circumstances, allowing the statutes of limitations to be tolled as of the date the *Dinsmore* action was filed provides no balance between the defendant's need to be "notified of the substantive claims brought against them" and the goals of efficiency for which Rule 23 strives.

Based on the allegations in the SAC, which fail to plead adequate facts that Signal Securities had actual notice of the pendency of the *Dinsmore* action, this Court affirms its previous finding that the statutes of limitations are tolled as of the filing of the SCACAC on June 10, 1994. However, if Plaintiffs believe the effort would not be futile, the Court grants Plaintiffs leave to amend *only Paragraph 156* of the proposed SAC for the sole purpose of alleging sufficient facts that Defendant Signal Securities had actual notice of the *Dinsmore* action as of a certain date. If Plaintiffs can allege these additional facts, this Court may reconsider, without any further briefing or argument, its prior finding that the statute of limitations are tolled as of June 10, 1994, when the SCACAC was filed and Signal Securities was a named defendant. If Plaintiff alleges sufficient facts causing this Court to modify its prior rulings and permit tolling from March 1, 1993, Plaintiffs' claims would not be barred by the one-year statute of limitations.

**E. *Plaintiffs' § 12(1) claims are barred because equitable tolling does not apply to these claims.***

■ Plaintiffs also seek recovery against Defendant under Section 12(1) of the Securi-

ties Act of 1933 (15 U.S.C. § 77*l*(1)) (sale of unregistered securities). Section 13 of the Securities Act of 1933 (15 U.S.C. § 77m) states:

No action shall be maintained to enforce any liability created under §§ 77a or 77*l*(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made ... or, .. to enforce a liability created under Section 77*l*(1) of this title, unless brought within one year after the violation upon which it is based.

The violations on which this action is based allegedly occurred through "sales" of the Towers notes in March and April 1992. Subject to the discussion above, this Court has found that the statute of limitations is not tolled by the filing of the *Dinsmore* action, but is tolled only from June 10, 1994. Thus, Plaintiffs' § 12(1) claims against Defendant are barred by the one-year statute of limitations as the suit was not filed before March 30 or April 28, 1993, respectively, for the transactions at issue in this complaint.[18] In light of this bar, Plaintiffs argue that the statute of limitations applied to the § 12(1) claims should be equitably tolled as a result of Defendant's alleged fraudulent concealment of the cause of action.[19]

Courts within the Ninth Circuit as well as throughout the other circuits are split on whether equitable tolling applies to the one-year limitation for 12(1) claims. In *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1451 (S.D.Cal.1988) the court relied on reasoning developed in *In re Rexplore, Inc. Sec. Litig.*, 671 F.Supp. 679, 687 (N.D.Cal.1987) finding that the one-year statute of limitations is absolute with regard to 12(1) claims:

[There is] persuasive reasoning for holding that the one-year aspect is absolute: In

---

**18.** As noted above and below however, if by amendment facts are alleged to permit tolling to begin March 1, 1993, the § 12(1) claims would *not* be barred.

**19.** Specifically, Grafa alleges that some of the paperwork he received in association with the purchase of the Towers notes included a "Confidential Investor Questionnaire" which stated that the Towers notes were being sold in accordance with the Securities Act of 1933, and the offering

was being made "in reliance upon the exemption for private offerings contained in Section 4(2)" of the Act. Plaintiffs allege that Defendant expressly or impliedly represented that all materials provided to investors were correct and that therefore, the Towers notes were being legally offered and sold. Plaintiffs allege that they reasonably relied upon this language in refraining from initiating legal action under Section 12(1). (SAC ¶¶ 39 – 45.)

the opinion of this Court, the statutory language compels the conclusion that the equitable tolling doctrine was not intended to apply to section 12(1) claims. The statute specifically provides for accrual upon discovery for section 12(2) claims, but does not include similar language as to section 12(1) claims. A reasonable construction of this language is that Congress intended the one year limitations period of section 12(1) claims to be absolute. Additionally, since the registration, or lack thereof, of securities is a public record and easily discovered, it is inappropriate to apply the equitable tolling doctrine to a claim brought for failure to register securities.

Plaintiffs argue these cases are distinguishable from the present action because the courts discussed whether or not the securities were registered, an item which can be checked by the public record, and in the present claim, the defendants claimed that the securities were exempt from registration. However, this Court does not find that this issue was a determinative fact when the courts reached their conclusions, and in any event, this Court feels that if a reasonable investor is going to check whether or not the security he has purchased has been registered, that investor can determine with only some minimal extra effort whether the security is properly exempt from registration.

Plaintiffs cite *Hudson v. Capital Management Int'l, Inc.*, 1982 WL 1385 (N.D.Cal. Aug.24, 1982) (stating "since [section 12(1) ] reads like any normal statute of limitations, the [equitable] tolling doctrine should apply") and *In re National Mortgage Equity Corp. Mortgage Pool*, 636 F.Supp. 1138, 1167 (C.D.Cal.1986) (finding that the statute could be tolled "because no sound reason has been advanced why the tolling doctrine should not apply"). This Court disagrees with these propositions. First, this statute of limitation does not read like any other statute, as the statute provides for accrual *upon discovery* for section 12(2) claims, but does not so provide for 12(1) claims. Second, this Court finds that the actual language of the statute is a sound reason for finding that the equitable tolling doctrine should *not* apply. Equitable tolling, though generally read into every federal statute of limitations, cannot be applied in the face of contrary congressional intent. *Barton v. Peterson*, 733 F.Supp. 1482, 1490 (N.D.Ga.1990) *citing Hill v. Texaco*, 825 F.2d 333, 334 (11th Cir.1987). Thus, as Plaintiffs' claims were not filed before April 28, 1993, this Court finds that Plaintiffs' § 12(1) claims are barred by the statute of limitations and as such are **DISMISSED WITHOUT PREJUDICE.**[20]

**F. Additional arguments affecting the dates for tolling the statute of limitations.**[21]

1. *The SCACAC Dismissal.*

■ The SCACAC was voluntarily dismissed without prejudice as to the brokerage house respondents, including Defendant, on December 11, 1996. Plaintiffs argue that the statute of limitations should be tolled until January 10, 1997 as the dismissal became final only 30 days after the dismissal of the action. This Court briefly addressed this issue in its September 8, 1998 Order, finding that the New York class action dismissal was voluntary, and without prejudice, and thus it is not clear the plaintiffs could appeal. *See Concha v. London*, 62 F.3d 1493, 1507 (9th Cir.1995); *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1342 (9th Cir.1985), *corrected*, 773 F.2d 1049 (9th Cir.1985). (Sept. Order, p. 8 n. 10.) Plaintiffs have cited no authority to persuade this Court that the statute of limitations should be tolled for 30 days beyond the date of the dismissal. Accordingly,

---

20. As discussed in Section D above, if by amendment to the SAC, Plaintiffs state facts sufficient to justify the Court finding that tolling began as of the filing of the *Dinsmore* action on March 1, 1993, Plaintiffs' § 12(1) claims would *not* be barred by the statute of limitations and this Order of Dismissal would be withdrawn.

21. Since this Court ruled that the March and April 1992 transactions are separate actionable transactions, extension of the tolling period by 30 days beyond the dismissal of the SCACAC or by re-starting tolling with the filing of the *Garibaldi* action will not affect whether these claims are barred by the three-year statutes of limitations. The additional 82 days could affect Plaintiffs' claims under the one-year inquiry notice statute, or the one-year statute for § 12(1) claims. However, as discussed below, the Court finds that the filing of the state action tolls most of Plaintiffs' federal claims and thus the Court's conclusions are not affected by these additional 82 days.

this Court affirms its prior finding that the statute of limitations commenced running again on the date the SCACAC was dismissed.

### 2. *The Garibaldi Action.*

On January 6, 1997, a lawsuit alleging fraud in the sale of the Towers securities was filed in California Superior Court as *Garibaldi, et al. v. Certified Equities, Inc., et al.* The *Garibaldi* action and the instant action involve the same operative set of facts; Grafa is one of the named plaintiffs and Signal Securities is one of the many named defendants. The *Garibaldi* action is still pending subject to a Court ordered stay in state Superior Court. Plaintiffs argue that the filing of this action on January 6, 1997 tolled the statute of limitations until this action was filed in Federal court on March 3, 1997. (SAC ¶ 163.) This Court finds that the *Garibaldi* action tolls the statute of limitations for only some of Plaintiffs' claims.[22]

Plaintiffs rely on *Cervantes v. City of San Diego,* 5 F.3d 1273 (9th Cir.1993) to support the allegation that the *Garibaldi* action tolls the statute of limitations applicable to the claims in the instant case. The *Cervantes* case is inapposite as it involved a § 1983 claim whereby the Court applied California's statute of limitations, and determined whether the statute should be tolled in that case pursuant to California law. In this case however, the applicable limitations period is derived from federal, not state, law.[23]

In *Pace Industries v. Three Phoenix Co.,* 813 F.2d 234 (9th Cir.1987), the Ninth Circuit held that a prior state action asserting state antitrust claims did not toll the statute of limitations for federal antitrust claims subsequently filed in federal court. The court stated:

> Prior judicial actions ... "do not toll the statute of limitations, *no matter how close* their relationship to the one at bar." *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 319 (1st Cir.1978); *UAW v. Hoosier Cardinal, Corp.,* 383 U.S. 696, 708, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)

(where the Supreme Court refused to toll a six year Indiana statute of limitations when the federal lawsuit was filed seven years after the cause of action accrued and three years after the state court action was dismissed.) In *Ramirez,* the First Circuit reversed a lower court holding that the statute of limitations was tolled during a prior state court mandamus action brought by the same plaintiff against the same defendant and based on the same constitutional right. It held that *"to toll the statute, the action must be the case at bar, not merely a somewhat related action arising from the same facts." Id.* at 320.

*Pace Industries,* 813 F.2d at 240–41 (emphasis added).

Accordingly, this Court concludes that for actions over which the federal courts exercise exclusive jurisdiction, prior state actions may not toll the statute of limitations for subsequent claims filed in federal court. Federal courts have exclusive jurisdiction over claims asserted under the Securities Exchange Act of 1934 pursuant to 15 U.S.C. § 78aa, and therefore Plaintiffs were unable to bring these actions in the *Garibaldi* case. When Plaintiffs then presented these additional federal claims in this subsequent federal case, this case became an action that is closely related to the prior state action, but is in fact different from the case presented in the state court.

Also, by allowing a plaintiff to toll these federal claims by filing the equivalent state claim in state court, the federal statute of limitations would be subject to the variations of the different state statutes of limitations. The court in *Eichman v. Fotomat Corp.,* 880 F.2d 149, 156 (9th Cir.1989), another case involving antitrust laws, reached the same conclusion, stating:

> When a plaintiff has both state and federal law antitrust claims, he has the discretion to pursue a remedy in state or federal court. If the plaintiff chooses to pursue a state remedy first, the plaintiff may not invoke the doctrine of equitable tolling. If

---

22. For the same reasons as stated in footnote 20, tolling from either January 6, 1997 or March 7, 1997 does not materially affect the Court's conclusions under the facts presently alleged.

23. See 15 U.S.C. § 77m; *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 359–64, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

the filing of a state antitrust claim could equitably toll the federal antitrust statute of limitations, this would result in a judicially mandated tacking of state limitations periods onto the federal limits. [Citation omitted.] The result would be capricious because of the different state limitations periods. [ ]

Accordingly, this Court finds that the filing of the *Garibaldi* action does not toll the statute of limitations applicable to claims arising under the Securities Act of 1934.

However, this Court finds that with regard to the federal claims Plaintiffs did file as part of the state action, the case presented in federal court was in fact the same case presented in state court. In the *Garibaldi* action, Plaintiffs filed claims under §§ 12(1), 12(2), and 15 of the 1933 Securities Act. These claims are identical to the claims presently before this Court. The Court recognizes that there was no bar to Plaintiffs filing their claims in federal court. However, as these claims were already before the state court, filing the action in this court was unnecessary to preserve these claims. Once Plaintiffs elected to refile in Federal Court, it required a stay of the state court proceeding so as to prevent duplicative proceedings.

Also, finding that the statute of limitations for these identical federal claims are tolled when presented in prior state actions under concurrent jurisdiction is consistent with the purposes served by statutes of limitations as stated by the Supreme Court. The Defendant was on notice that Plaintiffs were pursuing their claims under the 1933 Securities Act, Plaintiffs were not "sleeping on their rights", and the Defendant knew of the substantive claims being brought against them, and by whom. *Crown, Cork & Seal Co.*, 462 U.S. at 352–53, 103 S.Ct. 2392.

Accordingly, this Court finds that the *Garibaldi* action did not toll the statute of limitations for claims brought under the 1934

Securities Exchange Act, but the statute of limitations were tolled with regard to the claims Plaintiffs presented pursuant to the 1933 Securities Act, specifically, Plaintiffs' §§ 12(1), 12(2) and 15 claims.[24]

## G. *Pleading Requirements for Fraud under Rule 9(b).*

In all averments of fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity...." Fed. R.Civ.Pro. 9(b). The particularity requirement is satisfied if the pleading "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express. Inc.*, 885 F.2d 531, 540 (9th Cir.1989).

In this Court's April 9, 1998 Order, this Court determined that Plaintiffs' original complaint failed to specify the time, place, and content of the false representations allegedly made by the various defendants. This Court stated that Plaintiffs must state allegations "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985) (citation omitted).

The Court finds that Plaintiffs' claims in both the FAC and the proposed SAC meet the particularity requirements of Rule 9(b). *See* FAC ¶¶ 57, 58–61, 64–66, 93–97, 106–110; SAC ¶¶ 18–21, 25–28, 30–32, 36, 39, 40, 43–44, 110, and 113. In the April Order (p. 13), this Court stated, "If ... Plaintiffs are able to allege facts to support a finding that discovery of Defendants' fraud did not reasonably

---

**24.** This Court does not believe that tolling the statute of limitations for Plaintiffs' § 12(1) claims by the filing of the *Garibaldi* action is inconsistent with this Court's finding that equitable tolling for fraudulent concealment does not apply to § 12(1) claims. By filing an action in state court, Plaintiffs have presented their 12(1) claims, albeit in another forum. This is distinct from an allegation that Plaintiffs could not have

filed due to a defendant's alleged fraudulent conduct, a scenario that is specifically excluded in 15 U.S.C. § 77(m) for 12(1) claims. Regardless, as discussed above, Plaintiffs' 12(1) claims are barred the statute of limitations unless sufficient facts can be alleged to justify tolling the statute of limitations from the time the *Dinsmore* action was filed.

occur until after a date less than one year before tolling began, then the amendment would not be futile." Defendant argues that Plaintiffs fail to allege the date on which Plaintiffs discovered fraud, and thus the amended complaints fail to satisfy this Court's orders. However, as Plaintiffs have alleged sufficient facts such that this Court could not determine, as a matter of law, that Plaintiffs had inquiry notice of Defendant's alleged fraud before the one-year statute of limitations ran, this Court finds that the FAC and the SAC satisfy the Court's order for particularity in that regard.

### H. *Causes of Action Under State Law.*

 Courts may exercise power of supplemental jurisdiction over state claims when the state and federal claims derive from a common nucleus of operative facts. 28 U.S.C. § 1367(a); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiffs contend the facts underlying the federal claims and the state claims are the same. In view of the Court's finding that some of Plaintiffs' federal claims cannot be dismissed on statutes of limitations grounds, and Plaintiffs have alleged sufficient facts of fraudulent conduct pursuant to Rule 9(b), the Court **DENIES** the motion to dismiss Plaintiffs' pendent state law claims.[25]

### III. CONCLUSION

In view of the foregoing, Defendant's Motion to Dismiss is **GRANTED IN PART**, without prejudice, with regard to the § 12(1) claims, and **DENIED IN PART** as to the other statutes of limitations defenses. Plaintiffs' motion to amend the complaint and file the proposed Second Amended Complaint is **GRANTED**. If Plaintiffs file a Second Amended Complaint, Plaintiffs are hereby ordered to file the proposed Second Amended Complaint as it now exists, except that Plaintiffs may amend *only Paragraph 156* should Plaintiff feel it would not be futile. Plaintiffs are hereby ordered to file any amended complaint no later than *March 1, 1999.* If Plaintiffs fail to file an amended complaint by that time, Plaintiffs § 12(1)

claims will be **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

---

**25.** As Defendant did not move to dismiss Plaintiffs' state claims on the grounds that they may be barred by the state statute of limitations, this Court does not make any determination regarding whether any state claims are barred by the respective state statutes of limitations.