Filed 5/29/14  Royalty Alliance v. Tarsadia Hotels CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROYALTY ALLIANCE, INC. et al., | D062537 & D063402 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-00090678-CU-SL-CTL) |
| TARSADIA HOTELS et al., | |
| Defendants and Respondents. | |

CONSOLIDATED APPEALS from a judgment and an order of the Superior Court of San Diego County, Richard E.L. Strauss, Judge.  Affirmed.

Aguirre, Morris & Severson, Michael J. Aguirre, Christopher S. Morris and Maria C. Severson for Plaintiffs and Appellants.

Cox, Castle & Nicholson, Frederick H. Kranz and Lynn T. Galuppo for Defendants and Respondents.

Plaintiffs and appellants Royalty Alliance, Inc., Jane and Mike Bannister, Robert LeBorne and Louie and Rosemarie Linzaga (collectively plaintiffs) appeal the judgment entered after the court granted three summary adjudication motions of defendants and respondents Tarsadia Hotels (Tarsadia), 5th Rock, LLC (5th Rock), MKP One, LLC, Tushar Patel, B.U. Patel, and Gregory Casserly (collectively defendants). Plaintiffs separately appeal[1] the order of the court awarding defendants attorney fees and costs.

Plaintiffs were purchasers of condominiums in the Hard Rock Hotel San Diego, a condominium/hotel project (hotel). Defendant 5th Rock was the developer and seller of the condominium units (units), and Tarsadia was the hotel operator. Under the governing Purchase Contract and Escrow Instructions for Hard Rock Hotel & Condominiums (purchase contract), 5th Rock retained plaintiffs' purchase deposits after none of the plaintiffs closed escrow on the purchase of their units. Plaintiffs in response brought a class action lawsuit against defendants. As discussed in more detail *post*, the operative complaint asserted securities and fraud claims, a claim pursuant to Business and Professions Code section 17200 et seq., and claims for money had and received and invalid forfeiture based on defendants' retention of plaintiffs' purchase deposits.

---

[1] On February 28, 2013, this court ordered the related appeals in D062537 and D063402 be considered together, and on the court's own motion, they are hereby consolidated for disposition pursuant to the concurrently filed order.

After several continuances, the court granted in part and denied in part defendants' motion for summary adjudication based on statute of limitation grounds, finding the first, second, third, fourth and sixth claims were time-barred; as to the fifth cause of action for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.; hereafter the UCL claim), the court found plaintiffs presented no evidence of alleged predicate bad acts; and finally as to the seventh claim for invalid forfeiture, it found the liquidated damages clause in the purchase contract was valid and enforceable.

As we explain, we independently conclude the court properly granted the motions for summary adjudication in favor of defendants. We further conclude the court properly exercised its discretion in awarding defendants their reasonable attorney fees and costs. Affirmed.

FACTUAL AND PROCEDURAL BACKGROUND[2]

At the outset, we note that plaintiffs' factual summary in their opening brief is substantially one-sided and argumentative, in violation of California Rules of Court,

---

[2]    Plaintiffs challenge the evidentiary rulings of the trial court, generally contending that *all* of the evidence they proffered is admissible and thus should be considered on appeal. We conclude, however, that plaintiffs have failed to meet their burden to show the trial court's specific evidentiary rulings were incorrect and prejudicial, as their general approach to those objections on appeal preclude any meaningful discussion or analysis of those rulings, which are reviewed in any event for abuse of discretion. (See *Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1481 [noting a "trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion" and noting an "appellate court will not disturb the trial court's decision unless the trial court exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination"].)

rule 8.204(a)(2)(C) that a brief *must* "[p]rovide a summary of the significant facts limited to matters in the record."[3] Rather than striking this portion of plaintiffs' opening brief, we instead rely on our own review of the record and, in part, on the statement of facts provided by defendants in their respondents' brief. (See, e.g., *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; see also *In re S.C.* (2006) 138 Cal.App.4th 396, 402 [citing *Foreman & Clark Corp.v. Fallon* for the proposition that an "appellant must fairly set forth all the significant facts, not just those beneficial to the appellant"].)

It is undisputed that, in or about May 2006, each plaintiff executed the following written agreements to purchase a unit in the hotel: (1) the purchase contract; (2) the Acknowledgement and Agreement Addendum (addendum) and the Hard Rock Hotel & Condominiums Common Interest Development Addendum (CID addendum) (collectively the addenda); and (3) the Unit Maintenance and Operation Agreement (operation agreement).

Before signing the purchase contract, the addenda and the operation agreement, plaintiffs relied on a Final Subdivision Public Report (public report) they received from 5th Rock, which was issued on April 4, 2006 by the California Department of Real Estate (DRE), File No. 120249LA-F00, as evidenced by the receipt of public report each plaintiff executed in or about May 2006 before each signed the purchase contract.

---

3     It is not clear why plaintiffs in their statement of facts engaged in substantial argument and presented the facts in such a one-sided manner, given that the first several pages of their 50-page opening brief were dedicated to their introduction/summary of argument that was *all* argument.

In order to obtain the public report, 5th Rock submitted to the DRE a Notice of Intention (Common Interest) questionnaire (notice of intention) in August 2005. However, the notice of intention "was not provided to investors," including plaintiffs.

Also before signing the purchase contract, each plaintiff received a copy of the Declaration of Covenants, Conditions, Easements and Restrictions for 5th & K Master Association (Master CC&R's), which was recorded in March 2006 in the official records of San Diego County, Document No. 06-195633. The CID addendum executed by each plaintiff in May 2006 acknowledged each received the operation agreement, the public report and the master CC&R's that same month.

Section 19 of the purchase contract states in part:

"19. <u>PURCHASE NOT AN INVESTMENT</u>. BY PLACING HIS, HER, THEIR INITIALS IN THE SPACE PROVIDED HEREIN BELOW, BUYER EXPRESSLY ACKNOWLEDGES THAT:

"(a) BUYER IS PURCHASING THE UNIT FOR ITS REAL ESTATE VALUE AND NOT AS AN INVESTMENT;

"(b) NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE REPRESENTED OR OFFERED THE PROPERTY AS AN INVESTMENT OPPORTUNITY FOR APPRECIATION OF VALUE OR AS A MEANS OF OBTAINING INCOME FROM THE RENTAL THEREOF; AND

"(c) NEITHER SELLER NOR ANY OF ITS EMPLOYEES OR AGENTS HAVE MADE ANY STATEMENTS OR REPRESENTATIONS AS TO RENTAL OR

OTHER INCOME THAT MAY BE DERIVED FROM THE UNIT OR AS TO ANY OTHER ECONOMIC BENEFIT . . . TO BE DERIVED FROM THE PURCHASE AND/OR OWNERSHIP OF THE UNIT."

The record shows that each plaintiff placed his/her/its initials in the space provided immediately following section 19 of the purchase contract.

Moreover, the addendum each plaintiff executed states in part:

"4. REPRESENTATIONS AND WARRANTIES. It is understood and agreed that there have been no representations, warranties or inducements made to Buyer except those herein set forth, and that no representation, promise or warranty has been made by Seller or any duly authorized agent of Seller, including but not limited to . . . (b) the investment potential of the Unit . . . . [¶] . . . [¶]

"12. NO RENTAL REPRESENTATIONS. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT: (A) SELLER AND ITS AGENTS ARE NOT MAKING ANY REPRESENTATIONS AS TO THE FEASIBILITY OF RENTING THE UNIT OR OTHERWISE GENERATING INCOME OR DERIVING ANY OTHER ECONOMIC BENEFIT FROM OWNERSHIP OF THE UNIT; (B) SELLER AND ITS AGENTS HAVE MADE NO REPRESENTATIONS (NOR IS ANYONE AUTHORIZED TO DO SO) CONTRARY TO THIS SECTION WITH RESPECT TO . . . ANY OTHER ECONOMIC BENEFIT . . . RELATING TO THE PURCHASE OF THE UNIT . . . .

6

"13. <u>NO ORAL REPRESENTATIONS</u>. BUYER ACKNOWLEDGES AND AGREES THAT BUYER HAS NOT RELIED AND SHALL NOT RELY ON ANY COMMENT, REPRESENTATION OR DESCRIPTION OF THE PROJECT, ITS AMENITIES, THE COMMON AREAS, OR THE UNIT, THAT ARE NOT CONTAINED IN THE CONTRACT OR DOCUMENTS SPECIFICALLY REFERENCED IN THE CONTRACT OR OTHERWISE . . . ."

Plaintiffs' 45-page third amended complaint (TAC or operative complaint) alleged on behalf of themselves and a class of similarly situated investors that defendants "ingenuously made the [hotel] investment look like a condominium common interest development" by, among other things, "push[ing the hotel] through the California Department of Real Estate (DRE) regulatory process by making material misrepresentations and omissions of material fact," including failing to provide to DRE and the plaintiffs the Rental Management Agreement (RMA) and the operation agreement. (TAC, ¶¶ 25 & 30.) The operative complaint further alleged that had defendants made "full disclosure" of all material facts governing the transaction, investors such as plaintiffs "would not have given money deposits towards purchasing interests in [the hotel]," and "the DRE regulators would have recognized the transaction was not appropriate for condominium treatment because it was a security transaction required to be qualified by the California Department of Corporations."[4]

---

[4] The Ninth Circuit Court of Appeals in *Salameh v. Tarsadia Hotel* (9th Cir. 2013) 726 F.3d 1124, 1128 recently held that the purchase by the plaintiff buyers of units in the *same* hotel as plaintiffs in the instant case did *not* involve the sale of a security under federal *and* California law because the plaintiff buyers could not allege sufficient

Moreover, plaintiffs alleged in their operative complaint that because the sale of the units constituted the sale of securities and because none of defendants had a broker dealer license, defendants knowingly and intentionally violated California securities laws (TAC, ¶¶ 35-37); that plaintiffs invested money in the hotel with the expectation they would receive profits from its operation (TAC, ¶ 40); that plaintiffs expected profits based on the efforts of the management of the hotel and not from plaintiffs' own efforts, inasmuch as the plaintiffs were not allowed to possess a key to their units, were not permitted (by restrictions imposed by the City of San Diego before plaintiffs executed the purchase contracts) to stay in their units for longer than 28 days a year (TAC, ¶ 50) and allegedly were required to join the rental program run by one or more of defendants, who in turn would act as plaintiffs' "exclusive rental agent" (TAC, ¶ 51); that defendants would retain much of the profits expected by plaintiffs in operating the hotel (TAC, ¶ 51); that the "boilerplate disclaimers" used by defendants were not contained in all the documents and were, in any event, "contradicted by the economic reality of the investment terms" (TAC, ¶ 58); and that defendants "distracted investors with claims that [the hotel] was a hot new scene and a place to be seen" and

facts in their operative pleading—in response to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) brought by many of the same defendants named in the instant case—showing they were "offered the real-estate and rental-management contracts as a package" and were "induced to buy the condominiums by the rental-management agreement." The Ninth Circuit thus did not reach the district court's alternate finding that the plaintiff buyers' securities claims were barred by the applicable statutes of limitations and were not pleaded with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). (*Salameh v. Tarsadia Hotel*, at p. 1129.)

8

"successfully marketed the sizzle of the [hotel] investment opportunity without going through the legally required process of registration and qualification" of the investment contracts executed by the plaintiffs that were in reality unregistered securities. (TAC, ¶ 72, 73.)

As noted, plaintiffs asserted seven causes of action against one or more of the defendants: misrepresentations and omissions, material assistance, in violation of Corporations Code sections 25401, 25501 and 25504.1 (first cause of action); control person liability, in violation of Corporations Code section 25504 (second); common law fraud/misrepresentation (third); common law fraud/concealment (fourth); the UCL claim (fifth); money had and received (sixth); and invalid forfeiture (seventh).

Plaintiffs further alleged they brought their action "within: one (1) year after discovery of the untrue statements or the omissions of material facts alleged herein; . . . one (1) year after discovery of the untrue statements and omissions should have been made by the exercise of reasonable diligence; and . . . three (3) years of the sale of the [hotel] [i]nvestment [c]ontracts." (TAC, ¶ 89.) Plaintiffs alleged they "did not discover the facts on which this action is based until after consulting with counsel, which was less than a year before the filing of this operative complaint." (TAC, ¶ 89.)

As also noted, defendants in response filed various motions for summary judgment/adjudication that were based on individual causes of action or on causes of action that concerned the same or similar facts and/or law. As relevant here, one such motion was based on statute of limitations grounds and two such motions separately

9

sought summary adjudication of the UCL and forfeiture claims.  After plaintiffs unsuccessfully sought to strike all the motions on the grounds they allegedly exceeded the page limits, as discussed in more detail *post*, the court issued its tentative rulings dismissing all of plaintiffs' claims, finding that the securities, fraud and money had and received claims were time-barred and that the UCL and forfeiture claims lacked merit.

Following the court's publication of its tentative rulings at the May 2012 hearing, the court granted the plaintiffs' request for a continuance because plaintiffs' counsel "spoke of newly discovered evidence that they wish[ed] to present to the Court."  The court thus agreed to "trail[] all motions . . . and set[] a hearing to consider whether plaintiffs shall be allowed to present additional evidence."  The court set a briefing schedule and continued the hearing on the motions to mid-June 2012.

At the June 2012 hearing, the court confirmed its May tentative rulings, finding in part as follows:

"On May 11, 2012, at the request of Plaintiffs, the Court continued all Motions for Summary Judgment/Adjudication filed by Defendants to June 15, 2012, to consider whether Plaintiffs should be allowed to present additional newly discovered evidence. After review of the supplemental filings by both parties the Court, in its discretion, finds that Plaintiffs have failed to establish good cause exists to continue the hearings to consider the proposed new evidence filed by Plaintiffs.  Despite the voluminous submission by Plaintiffs, they failed to explain or establish why the proposed 'newly discovered evidence' was not or could not have been obtained earlier.  This case was

10

filed over two years ago and the parties have engaged in extensive discovery. Plaintiffs also had the requisite statutory notice of the motions and a sufficient time to oppose them. Yet, there has been no showing by Plaintiffs to support that they acted diligently in seeking the evidence which they now seek to provide. Nor have Plaintiffs provided any explanation as to why they failed to seek a continuance sooner. [Citations.] Further, the majority of the 'newly discovered evidence' appears to consist of documents which Plaintiffs had prior to the filing of their oppositions and/or were actually included and referenced in their oppositions. While the Declarations filed by Plaintiffs' counsel state that the significance of these documents was not revealed until certain depositions occurred, these Declarations fail to explain how or why the evidence/documents are significant. Additionally and perhaps most importantly, Plaintiffs failed to explain how the proposed new evidence is relevant to the issues raised in the motions and contains facts essential to justify their oppositions to the motions at issue. [Citations.] Nor was the Court able to decipher how the proposed 'newly discovered evidence' was relevant or essential even after its review of the Separate Statements Based on New Evidence filed by Plaintiffs[,] which primarily consisted of lengthy argument (11 pages single spaced), not facts. Thus, Plaintiffs failed to adequately establish or explain why this evidence is essential to support the opposition and refute the facts set forth in Defendants' motions. [¶] Additionally, Plaintiffs submitted several 'corrected' separate statements in opposition in an effort to cure what they consider to be procedural defects with their prior separate statements in

11

opposition.  However, the Court did not permit the filing of any such corrected pleadings, nor did Plaintiffs request permission to do so.  Further, in this case, the evidence Plaintiffs relied upon to support the facts set forth in their separate statements (Declaration of Severson) was ruled inadmissible for many reasons.  Thus, the failure to provide admissible evidence in support of the facts set forth in a separate statement is not a 'procedural' defect but rather a substantive one.  [Citation.]  As such, the Court in its discretion declines to allow, or continue the hearings to consider, these 'corrected' separate statements.  [¶]  Therefore, based on the foregoing, the Court's tentative rulings issued on May 11, 2012, remain as issued."

DISCUSSION

I

*Summary Adjudication on Statute of Limitations Grounds*

Plaintiffs contend the trial court erred when it granted summary adjudication based on the applicable statutes of limitations in favor of defendants with respect to their first, second, third, fourth and sixth causes of action.  Specifically, they contend the applicable statute of limitations for the violations of the California Corporations Code is five years, defendants "never carried their initial burden of showing the existence of storm warnings" of fraud and a reasonable person would not have discovered the facts constituting the securities fraud by defendants.  They also argue the issue of whether the limitations period ran was a question for the jury.

12

A. Additional Background

As noted, the court granted defendants' motion for summary adjudication on the grounds that plaintiffs' first, second, third, fourth and sixth causes of action were untimely, ruling in part as follows:

"The motion for summary adjudication is GRANTED as to the first, second, third, fourth, and sixth causes of action as to all Plaintiffs. (CCP §437c.) The motion for summary adjudication is DENIED as to Plaintiffs Robert Leborne, Mike Bannister, Jane Bannister, Louie Linzaga, and Rosemarie Linzaga's fifth and seventh causes of action as discussed below. (Plaintiff Royalty Alliance did not challenge the fifth or seventh causes of action by way of this motion).

"Preliminarily, the Court sustains Defendants' objections to, and strikes, the Declaration of Plaintiffs' counsel Maria Severson. Ms. Severson submitted a Declaration in support of Plaintiffs' opposition which is improper and lacks evidentiary value as it is not based on personal knowledge, lacks foundation, is replete with hearsay, conclusions, and opinion, and fails to properly authenticate the exhibits submitted by Plaintiffs. [Citations.] Thus, the Court cannot and did not consider Ms. Severson's Declaration, nor the exhibits referenced therein, submitted by Plaintiffs and cited in Plaintiffs' Separate Statement in Opposition. Moreover, Plaintiffs failed to comply with C[alifornia] R[ule of] C[ourt,] [r]ule 3.1116(a). The Court also sustains Defendants' objections to the Declaration of Chanell Kachi. Defendants' objections to the Declaration of James Sevel are sustained as to Nos. 2-4, 10, 12-29, and overruled in

13

all other regards. Defendants' objections to the identical declarations filed by Plaintiffs are sustained as follows: as to the Declaration of Plaintiff Coronado Haro [on behalf of Royalty Alliance]: Nos. 28-33, 34 (referring to interest as security) and 36; as to the Declaration of Plaintiff Robert Leborne: Nos. 44-49, 50 (referring to interest as security) and 52; as to the Declaration of Plaintiff Mike Bannister: Nos. 60-65, 66 (referring to interest as security) and 68; as to the Declaration of Plaintiff Jane Bannister: Nos. 76-81, 82 (referring to interest as security ) and 84; as to the Declaration of Plaintiff Louie Linzaga: Nos. 92-97, 98 (referring to interest as security) and 100; and as to the Declaration of Plaintiff Rosemarie Linzaga: Nos. 109-113, 114 (referring to interest as security) and 116. All other objections to the declarations are overruled. Plaintiffs' objection to the motions filed by Defendants is overruled.

"**Issue Nos. 1-4 and 6:**

"The motion is granted. The first and second causes of action for violation of Corp. Code §§25401, 25501, 25504 and 25504.1 are subject to a five/two-year statute of limitations as set forth in Section 25506(b) and Section 25507(b). The applicable two (2) year statute of limitations is triggered when Plaintiff has inquiry notice of the claim. [Citation.] Plaintiff[s'] third and fourth causes of action for misrepresentation and concealment respectively, are governed by a three-year limitations period. Under California's delayed discovery rule, a cause of action is deemed to have accrued upon 'discovery, by the aggrieved party, of the facts constituting fraud.' [Citation.] California law provides that inquiry notice is subject to an 'objective' standard, which

14

can be determined [']as a matter of law.' [Citation.] The fifth cause of action for violation of Business & Professions Code §17200 and the seventh cause of action for invalid forfeiture are subject to a four year statute of limitations. [Citations.] The sixth cause of action for money had and received is subject to a three-year limitations [period] when the gravamen of the cause of action is, as here, . . . based on fraud. [Citation.]

"As to Issue Nos. 1-4 and 6, pertaining to the first, second, third, fourth, and sixth causes of action, the Court finds that Defendants met their burden to establish that Plaintiffs' claims are time barred. [Citations.] The undisputed facts establish that all Plaintiffs received/signed the Purchase and Sale Agreement, Addenda, Operation[] Agreement, CCRs, Bylaws, Articles of Incorporation and the Final Report from the DRE which were provided to them and/or made publically available by May of 2006. [Citations.] Further, according to Plaintiffs, they received information regarding [the] Rental Management Agreement ('RMA') sometime in 2007. [Citation.] These documents disclosed the very information upon which Plaintiffs predicate their claims (as alleged in the TAC) and/or contradict what Plaintiffs claim they were told by Defendants. Specifically, it is undisputed that the above referenced documents provided Plaintiffs with knowledge that: the purchase of the unit was not an investment and the unit was being purchased for its real estate value; . . . Defendants did not represent or offer the property as an investment opportunity for appreciation of value or as a means of obtaining income from the rental thereon; Defendants did not make any

15

statements or representations as to the rental or other income that would be derived from the unit or as to any other economic benefit; . . . occupancy was limited to 28 days; information regarding key access and control over the units; and the structure and assessment obligations of the Associations. [Citations.] This evidence is sufficient to support that Plaintiffs were put on inquiry notice and knew or should have known of the facts giving rise to their claims concerning Defendants' alleged representations/omissions regarding the nature of the transactions at issue, including whether they were investments as early as 2006 and no later than 2007, to commence the running of the statute of limitations. It is also undisputed that Plaintiffs did not file this action until April of 2010, which is beyond the two year statute of limitations applicable to the first and second causes of action and the three year statute of limitations applicable to the third, fourth and sixth causes of action.

"Plaintiffs failed to show a triable issue of material fact exists concerning when Plaintiffs knew or should have known of the facts underlying their claims. As previously discussed, the Declaration of Maria Severson cannot be considered. The Declarations filed by Plaintiffs, which are all identical, state that they did not become aware that the interests they were sold constituted a security or that a fraud had occurred until after they contacted counsel. However, Plaintiffs fail [to] set forth when they consulted with counsel. Nonetheless, it is the discovery of facts, not their legal significance or consultation with an attorney[,] that starts the running of the statute of limitations. [Citation.] Additionally, it is Plaintiffs' claim in this action that the

16

purchase of the condominium unit and RMA were part of a single deal and that this transaction constitutes a security investment. Plaintiffs' Declarations confirm that they had knowledge of both the fact of the purchase and the fact that there was a RMA no later than 2007. The Declarations also state Plaintiffs were unaware: 1) of the ground lease; 2) that the developer had entered into the 2005 Management Agreement; 3) of the documentation that showed an annual loss per unit and other costs associated with the ownership of a unit; and 4) that Defendants were using income capitalization methods for determining the value of the units while not using that method in presenting the value under the appraisals used to support the price for which the units were sold. However, Plaintiffs' conclusory statements which are not supported by any foundational facts or evidence do not constitute the competent factual proof required by Code of Civil Procedure section 437c sufficient to create a triable issue. Thus, the Court finds that the first, second, third, fourth, and sixth causes of action are time-barred as to all named Plaintiffs."

B. Guiding Principles

Summary judgment/adjudication is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

17

A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) If the defendant makes such a showing, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of one or more material facts as to that cause of action or as to a defense to the cause of action. (*Aguilar*, at pp. 850-851.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action." (*Id*. at p. 853.)

On appeal from the entry of summary judgment, "[w]e review the record and the determination of the trial court de novo." (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.) "While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny. [Citation.] We can find a triable issue of material fact 'if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; see also *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 ["responsive evidence that gives rise to no more than mere

18

speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact"].)

Moreover, " '[w]hile resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper.' " (See *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 419 (*Deveny*), quoting *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112; see also *Meadows v. Pacific Inland Secs. Corp.* (S.D.Cal. 1999) 36 F.Supp.2d 1240, 1245 (*Meadows*) [noting that " 'the issue of inquiry notice is often a factual issue for a jury,' " but that " 'where the underlying facts are undisputed, factually-based issues such as inquiry notice may be decided as a matter of law' "].)

C. Analysis

1. Violation of Corporations Code (first and second causes of action)

Plaintiffs' first and second causes of action are based on the alleged violations of Corporations Code sections 25401, 25501, 25504 and/or 25504.1. The applicable limitations period for the violation of such claims is set forth in Corporations Code section 25506, subdivision (b) which provides: "For proceedings commencing on or after January 1, 2005, no action shall be maintained to enforce any liability created under Section 25500, 25501, or 25502 (or Section 25504 or Section 25504.1 insofar as they related to those sections) unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the

19

discovery by the plaintiff of the facts constituting the violation, *whichever shall first expire*." (Italics added.)

In our independent review of the TAC, we conclude defendants satisfied their initial burden to show there is a complete defense to the first and second causes of action for violation of former section 25401[5] and section 25504,[6] respectively, of the Corporations Code. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

---

[5]     Former section 25401 of the Corporations Code—applicable in the instant case—provided: "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." Former section 25401 was modified effective January 1, 2014 to "expand the basis for unlawful activity, as specified." (Stats. 2013, ch. 335, p. 1.) Current Corporations Code section 25401 provides: "It is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following: [¶] (a) Employ a devise, scheme, or artifice to defraud. [¶] (b) Make an untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading. [¶] (c) Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person."

[6]     Section 25504 of the Corporations Code provides: "Every person who directly or indirectly controls a person liable under Section 25501 or 25503, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist." Section 25501 of the Corporations Code, in turn, states in relevant part: "Any person who violates *Section 25401* shall be liable to the person who purchases a security from him or sells a security to him, who may sue either for rescission or for damages . . . ." (Italics added.)

20

The *undisputed* evidence (see *Deveny*, *supra*, 139 Cal.App.4th at p. 419) here shows that plaintiffs, in connection with their individual purchases of the units at the hotel, received in or about May 2006 various documents from defendants, which contradicted myriad of the alleged (mis)representations made by defendants regarding the units in the hotel.[7]  As such, we conclude a reasonable person in plaintiffs' position *then* "should have suspected that an injury was caused by wrongdoing."  (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374 (*Kline*) [courts interpret "discovery" of facts constituting fraud for purposes of the limitations period "to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing"].)[8]

---

[7]    We assume that the evidence in the form of alleged statements that contradicted the various documents executed by and/or provided to plaintiffs was not barred by the parol evidence rule.  (See *Bank of America etc. Assn. v. Pendergrass* (1935) 4 Cal.2d 258, 263 [noting that its "conception of the rule which permits parol evidence of fraud . . . is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and *not a promise directly at variance with the promise of the writing*" (italics added)].)

[8]    Plaintiffs argue that this court should follow the reasoning of the recent U.S. Supreme Court decision of *Merck & Co. v. Reynolds* (2010) 559 U.S. 633 (*Merck*), which concluded that the use of the word "discovery" in 28 United States Code section 1658 regarding the limitations period for federal securities fraud claims "encompasse[d] not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."  (*Merck*, at p. 648.)  In reaching its conclusion, the *Merck* court noted that the "discovery" of facts that put a plaintiff on "inquiry notice" did not "automatically begin the running of the limitations period" (*id.* at p. 653), but that such notice "may be useful to the extent that [it] identif[ies] a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating" (*ibid*).  Under *Merck*, for purposes of federal securities fraud claims, the statute of limitations does not begin to run "until the plaintiff . . . discovers or a reasonably diligent plaintiff would

21

Specifically, in contrast to the allegations in the TAC as summarized *ante*, the record shows plaintiffs knew, or a reasonable person in plaintiffs' position should have known that, in or about May 2006: defendants had not registered the sale of the units at the hotel as securities (see *Meadows*, *supra*, 36 F.Supp.2d at p. 1251 [noting that registration, " 'or lack thereof, of securities is a public record' " and thus " 'easily discovered' " and, as such, refusing to apply the equitable tolling doctrine to a claim brought for failure to register securities]); as disclosed in the purchase contract and addenda, they (i.e., plaintiffs) were purchasing a unit in the hotel for its real estate value and *not* as an investment opportunity for appreciation of value and/or as a means of obtaining rental income or other economic benefits; as set forth in the operation agreement, the public report and the master CC&R's, the occupancy of their units was limited to 28 days during each calendar year; as disclosed in the operation agreement and in part in the master CC&R's, they would not receive keys to their units and defendants would control the management of the hotel, including housekeeping and access; as set forth in the public report and master CC&R's, the structure of the associations of the hotel and the assessment obligations of the owners were *then* known;

---

have discovered 'the facts constituting the violation,' . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." (*Id.* at p. 653.) We need not decide in this case whether the *Merck* standard applies to claims brought under section 25401 of the Corporations Code because we conclude that, even applying the *Merck* standard to the facts of the instant case, a reasonably diligent plaintiff would have discovered the facts constituting defendants' alleged violation of section 25401 in or about May 2006 and certainly by the end of 2006, at the latest.

22

and before they purchased their units, they were on notice the City of San Diego had imposed a restriction requiring the units in the hotel to be managed as part of the hotel.

That plaintiffs contend defendants misrepresented certain facts or failed to disclose other material facts, as the case may be, does not change our conclusion that a reasonable person in plaintiffs' position should have suspected in or around May 2006, or by the end of 2006 at the very latest, that an injury was caused by the alleged wrongdoing of defendants for purposes of the limitations period set forth in section 25506, subdivision (b) of the Corporations Code. As correctly noted by the trial court, these documents (and others) "disclosed the very information upon which Plaintiffs predicate their claims (as alleged in the TAC) and/or contradict what Plaintiffs claim they were told by Defendants."

Given that plaintiffs did not file their action until April 2010, and given our independent conclusions that plaintiffs' causes of action for defendants' alleged violation of the California Corporations Code accrued in 2006 at the latest, and that the two-year limitations period in Corporations Code section 25506, subdivision (b) governs in the instant case, we independently conclude defendants satisfied their initial burden to show a complete defense to plaintiffs' first and second causes of action. (See Code Civ. Proc., § 437c, subd. (o)(2); see also *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

23

As such, the burden then shifted to plaintiffs to demonstrate the existence of a triable issue of at least one material fact as to the statute of limitations defense to their securities-based causes of action. (See *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

Plaintiffs contend a triable issue of fact exists because many of the alleged "undisputed facts" stated in the various documents executed and/or provided to plaintiffs, as summarized *ante*, were directly disputed by evidence they proffered showing defendants and/or their agents (i.e., promoters) made representations regarding the revenue the units would produce for owners in an effort to market and sell the units.

However, even construing this evidence favorably to plaintiffs, as we must (see *Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 189), we conclude it does not create a triable issue of material fact. Our independent review of the summary of such evidence shows most of it was given to and/or available to plaintiffs at or near the time they purchased their units in or about May 2006 and, thus, actually supports our conclusion that a reasonable person in plaintiffs' position was *then* on notice of the conflict between the representations set forth by defendants in the documents plaintiffs executed and/or received, on the one hand, and the statements and alleged misrepresentations made by defendants without regard to the documents, on the other hand, which (actual) notice started the running of the statute of limitations in section 25506 of the Corporations Code. (See *Kline*, *supra*, 87 Cal.App.4th at p. 1374 [noting a cause of action accrues when a plaintiff knew or "should have suspected that an injury was caused by wrongdoing"].)

24

Plaintiffs also contend evidence discovered after they filed the instant case precludes summary adjudication on statute of limitations grounds. Specifically, they contend various documents uncovered during discovery showed inter alia plaintiffs would lose money on their investment in the hotel, defendants and/or their agents charged excessive fees to manage the units in the hotel on behalf of the plaintiff investors and defendants failed to give the DRE all necessary information in connection with the issuance of the public report. Plaintiffs further contend the gravamen of their TAC is based on the suppression of these facts.

However, in our independent review of the TAC, we conclude the gravamen of plaintiffs' first and second causes of action against defendants involves what plaintiffs contend is the alleged illegal sale of unregistered securities by defendants in connection with their sale to plaintiff investors of units in the hotel. That additional facts allegedly suppressed by defendants subsequently came to light after plaintiffs filed their action does not in any way alter our conclusion that the statute of limitations for violation of section 25401 commenced in or around May 2006, when plaintiffs received the various documents they contend contradicted myriad alleged misrepresentations *then* made by defendants and/or their agents regarding the units, including whether the purchase of a unit in the hotel was an investment in real estate or was an investment with the expectation of income and/or other economic gain or benefit. (See *Deveney*, *supra*, 139 Cal.App.4th at p. 421 [noting that although fraud is often concealed from the victim, " 'if the term "discovery" [in section 25506 was] viewed too literally, requiring

25

awareness of every fact necessary for a fraud claim, a plaintiff could unduly delay the commencement of litigation by asserting ignorance of the ultimate fact of fraud' "]; see also *Kline*, *supra*, 87 Cal.App.4th at p. 1374 [noting that "[a] plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery"].)

In addition, we reject the contention that plaintiffs' first and second causes of action accrued when they were advised by legal counsel that defendants' sale of the units in the hotel constituted an alleged unlawful sale of securities in violation of the Corporations Code. It is axiomatic that a cause of action accrues and the applicable limitations period commences when a plaintiff "discovers the cause of action" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397), which occurs when the plaintiff "at least suspects a factual basis, as opposed to a legal theory, for its elements" (*ibid*). "[S]imply put," a plaintiff is deemed to discover a cause of action when the plaintiff "at least 'suspects . . . that someone has done something wrong' " to him or her, " 'wrong' being used, not in any technical sense, but rather in accordance with its 'lay understanding.' " (*Id.* at pp. 397-398, fn. omitted; see also *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 897-898 [noting the "uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his [or her] claim" and noting that "if one has suffered appreciable harm and knows or suspects that . . . blundering is its cause,

26

the fact that an attorney has not yet advised him [or her] does not postpone commencement of the limitations period"].)

And finally, like the trial court, we note that plaintiffs do not provide the date they learned of these allegedly new facts that allegedly were suppressed by defendants.

For all of the foregoing reasons, we independently conclude plaintiffs failed to satisfy their burden to create a triable issue of material fact with respect to the statute of limitations defense to their first cause of action for violation of section 25401 of the Corporations Code.  As such, we further independently conclude that the court properly granted summary adjudication both on the first cause of action *and* on plaintiffs' second cause of action for control person liability, as provided in section 25504 of the Corporations Code, which statute, as relevant here, requires there be a violation of section 25501 and which statute, in any event, is also subject to the limitations period set forth in section 25506, subdivision (b).

2.  Common Law Fraud (third cause of action), Concealment (fourth) and Money Had and Received (sixth)

As noted by the trial court, there is a three-year statute of limitations for common law fraud and concealment.  (See Code Civ. Proc., § 338, subd. (d).)  The three-year limitations period also applies to a cause of action for money had and received when the gravamen of the latter claim is based on fraud, as is the case here.  (See *First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1670 (*Perry*) [common count

27

for money had and received to recover money obtained by alleged fraud is subject to the three-year limitations period governing fraud].)

A cause of action for fraud "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." (Code Civ. Proc, § 338, subd. (d).) Under the discovery rule, which is incorporated in subdivision (d) of Code of Civil Procedure section 338, a cause of action does not accrue "until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.) "The Legislature, in codifying the discovery rule, has . . . required plaintiffs to pursue their claims diligently by making accrual of a cause of action contingent on when a party discovered or *should have* discovered that his or her injury had a wrongful cause." (*Id.* at p. 808.) "In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Ibid*.)

Here, we independently conclude defendants satisfied their initial burden to show a complete defense based on the three-year statute of limitations set forth in Code of Civil Procedure section 338, subdivision (d) in connection with plaintiffs' third, fourth and sixth causes of action. (See Code Civ. Proc., § 437c, subd. (o)(2); see also *Aguilar*, *supra*, 25 Cal.4th at p. 850.) As noted *ante*, the record shows that in or about May 2006, a reasonable person in plaintiffs' position would have suspected an injury based on defendants' alleged wrongdoing, inasmuch as the documents plaintiffs

28

executed and/or were given at that time were entirely inconsistent with the alleged representations made by defendants and/or their agents at or near the same time, including inter alia the key representations regarding the nature of the investment being sold them and the economic benefits, if any, derived from that investment.

As before, the burden shifted to plaintiffs to demonstrate the existence of a triable issue of at least one material fact as to the statute of limitations defense to any of their causes of action for common law fraud, concealment and money had and received. (See *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

For the reasons given *ante* in connection with plaintiffs' first and second causes of action, we independently conclude plaintiffs also did not satisfy their burden to show a triable issue of material fact with respect to these causes of action. We thus independently conclude the court properly granted summary adjudication of plaintiffs' third, fourth and sixth causes of action, which were subject to a three-year limitations period from the discovery of defendants' alleged wrongdoing. (See Code Civ. Proc., § 338, subd. (d); *Perry*, *supra*, 11 Cal.App.4th at p. 1670.)

II

*Summary Adjudication of UCL Claim*

A. Additional Background

As noted, the court granted defendants' separate motion for summary adjudication of plaintiffs' UCL claim (fifth cause of action). In so doing, the court ruled in part as follows:

29

"Defendants met their burden to show that no triable issue of material fact exists. Defendants established Plaintiffs' claim cannot be predicated on the alleged securities violations as B&P Code §17200 does not apply to securities transactions. [Citation.] Defendants also established that each Plaintiff received a copy of the Operation Agreement, and the DRE Final Report specifically references the Operation Agreement [citations]; that the RMA is not a document which falls within B&P Code §11018.6 and §11010 [citations]; that Plaintiffs did not enter into the RMA [citation]; and that Plaintiffs were never provided with the Questionnaire to the DRE in connection with obtaining the Final Public Report [citations.]

"Plaintiffs failed to provide evidence sufficient to create a triable issue of material fact as to any of these issues to support Defendants engaged in unfair or unlawful business practices. The Declaration of Maria Severson cannot be considered, and the Declarations of Plaintiffs fail to set forth facts supported by competent evidence to create any triable issue. While Plaintiffs argue in their opposition that a triable issue of fact exists as to whether the RMA was voluntary, Plaintiffs provide no evidence to establish that it was required. Nor have they provided any evidence to show that the RMA was required to be provided to Plaintiffs or the DRE, or that they were provided with the Questionnaire, and thus relied on any statements set forth therein. Further, Plaintiffs agree that they did not enter into the RMA. Additionally, no conspiracy allegations are pled in the TAC and there is no evidence before the Court to support

30

such a theory even if there were such allegations. Therefore, summary adjudication of this cause of action is granted as to all Plaintiffs."

B. Guiding Principles and Analysis

The UCL "prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'" (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*), quoting Bus. & Prof. Code, § 17200.) "Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Kwikset*, at p. 30.) A plaintiff has standing to assert a claim under the UCL if the plaintiff " 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' " (*Id.* at pp. 320-321.)

The language in the UCL "as a result of the unfair competition" limiting standing to a plaintiff who lost money (Bus. & Prof. Code, § 17204) imposes an actual reliance requirement on the named plaintiff (and only the named plaintiff) when such an action is based on fraud because "reliance is the causal mechanism of fraud." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 325-326 (*Tobacco II*).)

Here, plaintiffs contend defendants engaged in fraudulent business practices when they allegedly gave the DRE a false answer in connection with the DRE questionnaire and when they withheld from the DRE the rental management program inducements and representation marketing documents.[9]

---

[9] As evidenced by the court's order granting summary adjudication, plaintiffs made several other contentions in the trial court regarding alleged acts of fraudulent

31

Regarding the DRE questionnaire, we note plaintiffs did not receive the questionnaire and thus could not rely on it, and we further note that plaintiffs do *not* contend the public report they in fact received contained false information.  We thus independently conclude the questionnaire—even if we assume it contains false information—cannot be used as a basis for plaintiffs' UCL claim.  (See *Tobacco II*, *supra*, 46 Cal.4th at p. 326.)

We reach the same result for the same reason with respect to the marketing documents that plaintiffs generally reference, which defendants allegedly withheld from the DRE (including any document described in Bus. & Prof. Code, § 11018.6, subd. (d)[10]).  As such, we independently conclude the grant of summary adjudication of this cause of action was proper.

and/or unlawful conduct by defendants in connection with their UCL claim that they have abandoned on appeal (i.e., the hotel units they purchased from defendants involved the alleged sale of unregistered securities).  (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)  We also note that plaintiffs in their TAC did *not* allege a false advertising claim against defendants in connection with their UCL claim.  (See, e.g., Bus. & Prof. Code, § 17530 [unlawful to make an untrue or misleading statement "concerning the extent, location, ownership, title, or other characteristic, quality, or attribute of any real estate located in this state"].)  Instead, plaintiffs in their TAC specifically contend defendants engaged in fraudulent and unlawful business practices by "fraudulently disguis[ing] and offer[ing] as real estate transactions" the sale of units in the hotel, by "fraudulent[ly] misrepresent[ing] . . . the true nature of the investment and real estate" and by "manipulat[ing] . . . the common interest development laws and procedures in California."

10      Section 11018.6 of the Business and Professions Code provides in relevant part: "Any person offering to sell or lease any interest subject to the requirements of subdivision (a) of Section 11018.1 in a subdivision described in Section 11004.5 shall make a copy of each of the following documents available for examination by a *prospective purchaser or lessee* before the execution of an offer to purchase or lease

*Summary Adjudication of Invalid Forfeiture Claim*

Plaintiffs next contend the court erred in granting summary adjudication of its seventh cause of action for invalid forfeiture because they contend the liquidated damage provision in the purchase contract each plaintiff executed was unreasonable.

A.  Additional Background

In affirming summary adjudication in favor of defendants on this claim, the court ruled in part as follows:

"[Regarding the seventh cause of action, the] undisputed evidence establishes that the provision meets the statutory requirements under Civil Code §1677 [citations] and that Plaintiffs expressly agreed to the provision as the applicable remedy in the event of their default.  [Citations.]  Thus, Defendants met their burden to show that the liquidated damage provision is valid and the burden shifts to Plaintiffs to demonstrate that the provision is unreasonable under the circumstances at the time it was made. [Citation.]  In opposition, Plaintiffs argue that they were unrepresented and this was a

_____

and shall give a copy thereof to each purchaser or lessee as soon as practicable before transfer of the interest being acquired by the purchaser or lessee: [¶] . . . [¶] (d) Any other instrument which establishes or defines the common, mutual, and reciprocal rights, and responsibilities of the owners or lessees of interests in the subdivision as shareholders or members of the subdivision owners association or otherwise." (Italics added.)  Given our conclusion on this issue, we need not decide whether section 11018.6 of the Business and Professions Code would even apply to the DRE, given the italicized language of the statute *ante* or whether plaintiffs were barred from premising their UCL claim on a purported violation of Business and Professions Code section 11000 et seq., including section 11018.6 therein, as defendants alternately contend, because no private right of action allegedly exists in California for such a claim.

high[-]pressured transaction; they were given lengthy purchase contracts with no bargaining power, and there were misrepresentations about the 'overwhelming demand' for the units. However, other than being unrepresented, there is no evidence to support Plaintiffs' assertions. The Declaration of Maria Severson cannot be considered, and the Declarations of Plaintiffs fail to set forth facts supported by competent evidence to create any triable issue in this respect. Therefore, Plaintiffs failed to meet their burden to show that the provision . . . was unreasonable, and summary adjudication of this cause of action is granted as to all Plaintiffs."

B. Guiding Principles and Analysis

It is axiomatic that parties to a contract may agree in advance to liquidate their damages, namely to provide ahead of time that a certain sum of money is conclusively presumed to represent the amount of damage that will be caused by a specified breach of the contract. (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1278.)

Civil Code section 1671, subdivision (b) provides with certain exceptions not relevant here: "[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made."

Civil Code section 1676, applicable to a liquidated damages provision in a contract to purchase real property that is *not* a "residential property" as defined in Civil Code section 1675 (which is the case here), states in part: "[A] provision in a contract to

34

purchase and sell real property liquidating the damages to the seller if the buyer fails to complete the purchase of the property is valid if it satisfies the requirements of Section 1677 and the requirements of subdivision (b) of Section 1671." (Cal. Civ. Code, § 1676.)

Finally, Civil Code section 1677 states: "A provision in a contract to purchase and sell real property liquidating the damages to the seller if the buyer fails to complete the purchase of the property is invalid unless: [¶] (a) The provision is separately signed or initialed by each party to the contract; and [¶] (b) If the provision is included in a printed contract, it is set out either in at least 10-point bold type or in contrasting red print in at least eight-point bold type."

Here, the liquidated damages provision informed the plaintiff buyers that on default of the purchase contract, the seller defendants would be entitled to recover damages and that such damages would be "extremely difficult and impractical to ascertain" because, among other reasons, such damages would be based "on the difference between the actual value of the unit as of the closing date and the purchase price for the unit as set forth in this contract, which difference must be based on opinions of value of the unit which can vary in significant amounts." As such and in order to limit the damages to which defendants may be liable and to avoid a lawsuit, plaintiffs each agreed that defendants could "retain buyer's escrow deposit" in accordance with the Civil Code as defendants' "sole and exclusive remedy in the event of buyer's default."

35

We independently conclude the liquidated damages provision in the purchase contract each plaintiff signed satisfies Civil Code sections 1671, 1676 and 1677, inasmuch as the undisputed evidence in the record shows each of the plaintiffs separately initialed this provision that complied with the statutory requirements. As such, under summary judgment law and under Civil Code section 1671, subdivision (b), the burden shifted to plaintiffs to show the liquidated damage provision each initialed in their respective purchase contract was "unreasonable under the circumstances existing at the time the contract was made."

Unlike in the trial court, plaintiffs now contend (for the first time) that the liquidated damages provision was unreasonable because the amount of the deposit—10 percent of the purchase price—allegedly bore no relationship to the range of actual damages because the units were to be rented. Because plaintiffs did not raise this contention in the trial court, we consider it forfeited. (See *Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 [noting the general rule that an argument may not be raised for the first time on appeal is "stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial"]; see also *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1519 [noting the well-established rule of appellate jurisprudence that "a litigant may not pursue one line of legal argument in the trial court, and having failed in that approach, pursue a different, and indeed, contradictory line of argument on appeal, thus depriving

the trial court of the opportunity to consider what the appellant contends on appeal is the real dispute"].)

In any event, we conclude this contention does not raise a triable issue of fact as it is based on mere speculation and is contrary to plaintiffs' understanding *at the time they executed the purchase contracts* that it would be extremely difficult to determine defendant sellers' damages on breach by plaintiff buyers. "An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citation.] Further, an issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions' [citation], or mere possibilities." (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196-197.) We thus independently conclude summary adjudication was properly granted as to plaintiffs' seventh cause of action for invalid forfeiture.

IV

*Attorney Fees*

Plaintiffs separately contend the court erred in awarding defendants attorney fees and costs because they contend the purchase contracts they executed were invalid. Alternatively, they contend the award of attorney fees and costs was improper because the gravamen of this action was fraud and because the award was unreasonable.

A. Brief Additional Background

Following the court's order granting defendants' motions for summary adjudication and its entering of judgment in favor of defendants, defendants moved to

37

recover their attorney fees pursuant to Civil Code section 1717. The motion was based on the attorney fees provision in the purchase contract executed by each plaintiff, which provided:

"In the event of bringing or initiation of any judicial reference, action or suit by either party against the other arising out of this Contract, the costs and expenses of suit or judicial reference, including reasonable attorneys' fees, shall be paid in accordance with the judgment or award made in connection with any such judicial reference, action or suit."

The court in granting the motion for attorney fees, ruled in part as follows:

"Defendants are the prevailing party as the motions for summary judgment/adjudication were granted in their favor resulting in a dismissal of the case. The Purchase Contract ('Contract') between the parties contains an attorney's fees clause which awards attorneys' fees, '. . . in any suit by either party against the other arising out of this contract. . . [.]' The attorney fee provision is not limited to actions brought on a breach of contract theory, or to actions brought to interpret or enforce the contract. Rather, it is broadly worded and applies to any action 'arising out' of the contract. All of the claims alleged by Plaintiffs arose from the Contract and the underlying transactional relationship between the parties pursuant to the Contract. Accordingly, Defendants are entitled to recover their reasonable attorneys' fees incurred in this action.

"Defendants seek attorneys' fees in the amount of $1,171,682.00.  With the exception of the paralegal hourly rate, the Court finds that Defendants have met their burden to show that the fees sought are reasonable.  [Citation.]  The Court finds that the hourly rates charged by Defendants' attorneys are comparable to the rates charged by attorneys in the legal community with similar experience.  Further, the time expended appears reasonable in light of the nature and extent of the work performed, the nature of the claims and issues involved, and the length and extent of the litigation.  However, as noted above, the hourly paralegal rate of $330 is not comparable with the customary rate charged in the legal community for similar services.  Thus, the Court in its discretion reduces the fee award by $25,000.  While Plaintiffs assert that the amount of fees is unreasonable because it exceeds the amount at issue in this action, Plaintiffs also sought punitive damages and attorneys' fees, in addition to the return of the deposits.  Further, although Plaintiffs claim that the fees are excessive, they have failed to challenge any specific billings submitted by Defendants or provide any support showing that the fees incurred were otherwise unreasonable or unnecessary.  Therefore, the Court awards Defendants their reasonable attorneys' fees in the amount of $1,146,682.00."

The record shows the court also awarded defendants costs of $42,978.66, after granting in part and denying in part the motion to tax costs of plaintiffs.

B. Guiding Principles and Analysis

"On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs . . . have been satisfied amounts to statutory construction and a question of law. [Citations.] [¶] Stated another way, to determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the [contract], and the facts are not in dispute, such review is conducted de novo. [Citation.] Thus, it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

It is axiomatic that the " 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) "In reviewing a challenged award of attorney fees and costs, we presume that the trial court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure." (*Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 621.)

40

Although plaintiffs sought an award of attorney fees and costs in their TAC, they contend the purchase contract each executed is invalid and unenforceable and, therefore, the attorney fees provision in each is also unenforceable. We disagree. "Under Civil Code section 1717, the prevailing party is entitled to attorney's fees even when it wins on the grounds that the contract is inapplicable, invalid, unenforceable or nonexistent, so long as the party pursuing the lawsuit would have been entitled to attorney's fees had it prevailed. [Citations.] The rationale is that Civil Code section 1717 is guided by equitable principles, including mutuality of remedy, and it would be inequitable to deny attorney's fees to one who successfully defends, simply because the initiating party filed a meritless case." (*Rainier National Bank v. Bodily* (1991) 232 Cal.App.3d 83, 86; see also *Yuba Cypress Housing Partners, Ltd. v. Area Developers* (2002) 98 Cal.App.4th 1077, 1082-1084.)[11]

---

[11]    Section 1717 of the Civil Code provides in part: "(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] (b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. . . . The court may also determine that there is no party prevailing on the contract for purposes of this section."

41

Moreover, as noted *ante*, we also conclude that the attorney fees provision contained in each of the fully-executed purchase contracts was valid and enforceable and that the "arising out of" language in the attorney fees provisions is sufficiently broad to encompass the tort-based causes of action alleged by plaintiffs in this case, including their claims for alleged violation of California's securities laws, inasmuch as the tort claims asserted by the plaintiffs "arose from the underlying transactional relationship between the parties." (See *Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1340, 1344 [noting the language—" '[i]f this Agreement *gives rise* to a lawsuit' "—warranted recovery of attorney fees for tort-based claims]; see also *Santisas v. Goodin* (1998) 17 Cal.4th 599, 608 [noting the "arising out of" language in a contract was "phrased broadly enough" to support an award to the prevailing party in an action alleging both contract and tort claims]; *Lerner v. Ward* (1993) 13 Cal.App.4th 155, 157-158, 160 [noting the language " 'arising out of this agreement' " supported an award of attorney fees for tort-based causes of action and thus reversing the court's order denying such fees and remanding to determine the reasonable amount of such fees].)

We also conclude the court properly exercised its discretion in awarding defendants fees and costs in this case. Indeed, the record shows defendants submitted detailed billing records in connection with their motion, which set forth the work performed and the hourly rate charged for that work. In addition, the record further shows plaintiffs did not specifically challenge any particular billing entry as unreasonable or unnecessary. As such, we further conclude that defendants satisfied their burden to show the fees and costs sought were reasonable and that plaintiffs did not sustain their burden to show otherwise. (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assoc.* (2008) 163 Cal.App.4th 550, 558, 564 [noting the general rule that a party seeking an award of fees and costs must make a prima facie showing the amount sought in such an award is reasonable and noting that once made, the burden then shifts to the party opposing the fee order to challenge specific items with "argument and citations to the evidence"]; see also *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141 [" 'It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error' "].)

DISPOSITION

We affirm the judgment in favor of defendants based on the trial court's grant of their summary adjudication motions and the order awarding them attorney fees and costs. The defendants are awarded their costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.